IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BO RAMBO,

Plaintiff,

v.

WARREN GREGORY ROBERTS and BENJAMIN THOMAS SMITH, in their individual and official capacities,

Defendants.

Case No. 3:25-cv-02092-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Bo Rambo ("Rambo"), an adult in custody ("AIC") currently housed at the Oregon State Penitentiary, filed this civil rights action against Dr. Warren Roberts ("Dr. Roberts") and Dr. Benjamin Thomas Smith ("Dr. Smith") (together, "Defendants"). (Compl., ECF No. 1.) Rambo alleges federal and state claims relating to the medical care he received while in the custody of the Oregon Department of Corrections ("ODOC").

The Court has jurisdiction over Rambo's claims pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons that follow, the Court denies Dr. Roberts' motion to dismiss.

///

## BACKGROUND

Rambo alleges that magnetic resonance imaging (an "MRI") of his right knee in June 2020 revealed that he had an oblique tear of the medial meniscus posterior horn and body, surface irregularity and signal abnormality of the medial patellar facet cartilage, and partial thickness defects of the trochlear cartilage. (Compl. ¶ 17, ECF No. 1.) Shortly thereafter, a nurse practitioner at Hope Orthopedics evaluated Rambo and recommended arthroscopic repair of his right knee. (*Id.* ¶ 18.)

On July 14, 2020, Plaintiff's ODOC medical provider submitted a request to the Therapeutic Level of Care ("TLC") Committee for Rambo to have his right knee surgically repaired, noting that Rambo's right knee was unstable. (*Id.* ¶ 19.) On July 30, 2020, the TLC Committee denied the request for surgery and recommended that Rambo first try physical therapy. (*Id.* ¶ 21.) Rambo completed a course of physical therapy but continued to have functional limitations. (*Id.* ¶ 22.)

On February 5, 2021, Plaintiff's ODOC medical provider submitted another request for surgery to the TLC Committee, noting that Rambo had completed physical therapy without improvement and noting the prior recommendation for arthroscopic repair. (*Id.* ¶ 26.) On February 18, 2021, the TLC Committee met and Dr. Roberts "unilaterally denied" Rambo's request. (*Id.* ¶ 27.) Dr. Roberts recommended "appropriate restrictions + conservative treatment[.]" (*Id.*) Dr. Roberts' finding was reported to Rambo as a decision by the entire TLC Committee. (*Id.*)

On June 24, 2021, a different ODOC medical provider submitted a request to the TLC Committee, proposing "referral to orthopedist for recommendations, possibly arthroscopy." (*Id.* ¶ 28.) On or about July 8, 2021, the TLC Committee met and Dr. Roberts unilaterally denied the request, finding the treatment was "not medically necessary." (*Id.* ¶ 29.) That finding was

reported to Rambo as a decision of the TLC Committee. (*Id.*) Rambo alleges that Dr. Roberts made the TLC Committee members sign forms to make it appear as if committee review had occurred and that Dr. Roberts made decisions based on the mood he was in, not objective medical criteria. (*Id.* ¶ 30.)

On or about July 17, 2024, Rambo fell as a result of the instability in his right knee and the fall caused a serious injury to his left knee. (*Id.* ¶¶ 31, 42.)

On or about July 25, 2025, an investigation report was issued finding "general detailed deficiencies and wrongdoing by ODOC medical administrators[,]" including Dr. Roberts. (*Id.* ¶ 33.) Rambo alleges that he was not aware until he read the report that "the wrongful acts and omissions of [Dr. Roberts] were the cause" of his failure to receive "adequate and timely medical care of his knee injuries." (*Id.* ¶ 34.)

At an October 22, 2025 medical appointment, a third-party orthopedic specialist reviewed an MRI of Rambo's knees and informed him he still required surgical repair of his right knee. (*Id.* ¶ 36.) The specialist expressed surprise that Rambo's knee had not been surgically repaired. (*Id.*) When Rambo replied that Dr. Roberts and the TLC Committee had denied his request for surgery, the specialist told him that the denial was medically unreasonable and that he now required surgery on both knees. (*Id.*)

**LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility

standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021) (citation omitted), and "[self-represented] litigants should be treated with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). There are, however, limits on the leeway that courts afford to self-represented litigants. For example, although courts "construe pro se pleadings liberally, . . . [courts] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

## DISCUSSION

### I. STATUTE OF LIMITATIONS

Dr. Roberts moves to dismiss Rambo's claims against him on the ground that the applicable two-year statute of limitations bars the claims because Rambo alleges that Dr. Roberts denied his requests for surgery in February and July 2021 and Rambo did not file his complaint until November 2025.[1] (Def.'s Mot. Dismiss at 3; Def.'s Reply at 2, ECF No. 18.) Rambo

[1] Dr. Roberts moves to dismiss Rambo's complaint for additional reasons in the introduction to his motion, but he does not develop any of those arguments in the body of his motion and therefore the Court does not address those arguments. (Def.'s Mot. Dismiss at 2,

responds that he was not put on notice of his injury until the investigation report was published in July 2025 and he did not learn that the care he received from Dr. Roberts was "medically unreasonable" and the cause of his further injury until a specialist so informed him in October 2025. (Pl.'s Resp. Def.'s Mot. Dismiss at 5, ECF No. 15.)

### A. Applicable Law

"Section 1983 contains no specific statute of limitations, and therefore federal courts apply the forum state's statute of limitations for personal injury actions." *Johnson v. Spivey*, No. 3:16-cv-00620-SB, 2018 WL 3468482, at *9 (D. Or. July 18, 2018) (citing *Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004)). In Oregon, the applicable statute of limitations for a personal injury action is two years. *See* OR. REV. STAT. § 12.110(1) ("An action . . . for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years[.]").

"Although 'state law determines the length of the limitations period, federal law determines when a civil rights claim accrues.'" *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 952 (9th Cir. 2022) (quoting *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019)). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (quoting *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008)). Oregon courts apply a similar discovery rule to personal injury claims. *See Clark v. Gilstrap*, 551 P.3d 971, 974 (Or. Ct. App. 2024) ("The statute of limitations for a personal injury claim under ORS 12.110(1) is subject to the 'discovery rule,' such that the statute of limitations does not begin until a plaintiff knows or reasonably should have known that they were injured, and that the defendant caused the injury." (citing *Cole v. Sunnyside*

---

ECF No. 11.) In addition, Dr. Roberts moves to dismiss Rambo's amended complaint (*id.* at 1) but Rambo has not filed an amended complaint.

*Marketplace, LLC,* 160 P.3d 1 (2007), *rev. den.*, 187 P.3d 219 (2008))), *rev. dismissed*, 563 P.3d 965 (2025).

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Samuelson v. Jewell Sch. Dist. 8*, 725 F. Supp. 3d 1195, 1219 (D. Or. 2024) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).

**B. Analysis**

Although the parties agree that a two-year statute of limitations applies to Rambo's federal and state claims, they disagree on the date the statute of limitations began to accrue. Dr. Roberts argues that Rambo was aware in 2021 that his treating medical providers had recommended knee surgery, that Dr. Roberts denied the requests, and that he continued to experience knee pain and instability. (Def.'s Reply at 2.) Rambo argues, *inter alia*, that the statute of limitations did not begin to run until 2025 when he first learned that Dr. Roberts was the cause of his injuries. (Pl.'s Resp. at 5, 7-9.)

The Court need not reach the question of whether Rambo's claims did not accrue until 2025 because Rambo alleges in his complaint that his right knee instability resulting from the surgical delays did not cause him further injury until he fell and injured his left knee on or about July 17, 2024. (*See* Compl. ¶ 31, "After the events described above in this claim [Rambo] fell because of the instability in his right knee. That fall caused [Rambo] to seriously injure his left knee. Had [Dr. Roberts] approved for [Rambo] to have surgery on his right knee in 2021, [Rambo] would not have fallen and seriously injured his left knee."; *see also id.* ¶ 36, alleging that a third-party orthopedic specialist informed Rambo in 2025 that he now requires surgical repair of both knees.) The Court finds that Rambo's deliberate indifference and negligence

claims accrued in (at least) July 2024 when he alleges he fell and sustained a new left knee injury as the result of his right knee instability. *See Bishop-McKean v. Wash. Dep't of Corr.*, No. 3:20-cv-05416-JLR-DWC, 2022 WL 4073090, at *9 (W.D. Wash. July 18, 2022) ("[D]elay in providing a prisoner treatment does not constitute an Eighth Amendment violation unless the delay causes substantial harm.") (citations omitted), *report and recommendation adopted*, 2022 WL 4017448 (W.D. Wash. Sept. 2, 2022); *cf. Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983) ("Where a claim of medical malpractice is based on the failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.").

Rambo filed his complaint in November 2025—within two years of accrual—and therefore the applicable two-year statute of limitations does not bar his claims.[2] *See Johnson v. Chudy*, 822 F. App'x 637, 639 (9th Cir. 2020) (reversing the district court's dismissal of a Section 1983 deliberate indifference claim as time barred where "the injury that is the basis of [the plaintiff's] claim [wa]s his development of advanced cancer as the alleged result of the defendant's failure to treat him, not the symptoms and pain the defendant allegedly failed to treat in 2009"); *see also Russum v. Or. Dep't of Corr.*, No. 6:21-cv-00836-SB, 2026 WL 2012879, at

[2] Dr. Roberts did not move to dismiss Rambo's abuse of a vulnerable person claims under Oregon Revised Statute § 124.100. (*See* Compl. ¶¶ 75-91.) The applicable statute of limitations for those claims is seven years and therefore Rambo's claims are not time barred even if the claims accrued in 2021. *See* OR. REV. STAT. § 124.130 ("An action under ORS 124.100 . . . to 124.140 . . . must be commenced within seven years after discovery of the conduct described in ORS 124.105 and 124.110 that gives rise to a cause of action under ORS 124.100[.]").

*8 (D. Or. June 24, 2026) (finding that the AIC's inadequate medical care claim did not begin to accrue until an outside provider informed him that he required surgery as a result of delays in obtaining a less invasive procedure while in ODOC custody), *findings and recommendation adopted*, 2026 WL 2010577 (D. Or. July 10, 2026); *Garges v. Or. Dep't of Corr.*, No. 2:25-cv-00094-YY, 2026 WL 1390197, at *4 (D. Or. Feb. 3, 2026) ("The allegation that plaintiff discovered in 2024 that he suffered from a distinct harm—i.e., the existence of allegedly permanent neurological damage [caused by delays in care while in ODOC custody]—is sufficient to establish that at least some of plaintiff's claims are timely and to reject defendants' request to dismiss the entire complaint."), *findings and recommendation adopted*, 2026 WL 1383876 (D. Or. May 18, 2026).

**CONCLUSION**

For the reasons stated, the Court DENIES Dr. Roberts' motion to dismiss (ECF No. 11).

**IT IS SO ORDERED.**

DATED this 28th day of October 2026.

Stacie F. Beckerman

HON. STACIE F. BECKERMAN
United States Magistrate Judge